UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELINO P.,[1] <br><br> Plaintiff <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-05341-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I.  PROCEDURAL HISTORY

Plaintiff Marcelino P. ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 16 ("Pltf.'s Br."), Dkt. 17 ("Def.'s Br."), and Dkt. 18 (Pltf.'s Reply").]  The Court has taken the parties' briefing under submission without oral argument.  For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB alleging disability beginning June 17, 2016. [Dkt. 15, Administrative Record ("AR") 22, 304-307.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Sung Park [AR 1-6, 22-30.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since June 17, 2016, the onset date. [AR 24 (citing 20 C.F.R. § 416.971).] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral shoulder impingement and rotator cuff tear; status post left shoulder arthroscopy; bilateral epicondylitis; bilateral wrist synovitis and tendinitis; degenerative joint disease of bilateral knees; and mild degenerative disc disease of the lumbar spine. [AR 24.] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 24 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.]

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as follows:

> he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand, walk and or/sit for 6 hours in an 8-hour workday with normal breaks but requires the ability to sit for 2 to 3 minutes after standing for 30 minutes and to stand for 2 to 3 minutes after sitting for 30 minutes. He is precluded from climbing ladders, ropes or scaffolds. He can climb ramps or stairs occasionally and balance, stoop, kneel, crouch and crawl occasionally. He can reach and handle bilaterally frequently but is precluded from overhead reaching. He can understand and communicate in simple English.

[AR 25.] At step four, based on Plaintiff's RFC and the vocational expert ("VE")'s

testimony, the ALJ found that Plaintiff is unable to perform any past relevant work. [AR 28.] At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [AR 29.] Accordingly, the ALJ found that Plaintiff "has not been under a disability" since the date the application was filed. [AR 30.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

### IV. DISCUSSION

Plaintiff raises a single argument, *i.e.*, that the ALJ failed to identify a significant number of jobs that he could perform at Step Five. [Pltf.'s Br. at 5-11.] The VE and the ALJ noted that Plaintiff would be able to work as a production assembler and an electrical goods inspector and that a significant number of those jobs exist in the national economy. Plaintiff, however, contends that the numbers presented by the VE are incorrect and are contradicted by evidence of job numbers found in the Occupational Requirements Survey ("ORS"), the Bureau of Labor Statistics ("BLS"), and the Dictionary of Occupational Titles ("DOT"). (Pltf.'s Br.

3

at 7). According to Plaintiff, the ALJ failed to resolve this "apparent conflict." For the reasons below, the Court disagrees with Plaintiff and affirms the ALJ's decision.

### 1.     Legal Standards

At step five of the sequential disability analysis, it is the Commissioner's burden to establish that, considering the claimant's residual functional capacity, the claimant can perform other work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (*quoting Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). To make this showing, the ALJ may rely on the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed hypothetical questions to the VE to establish: (1) what jobs, if any, the claimant can do; and (2) the availability of those jobs in the national economy. *Garrison*, 759 F.3d at 1011. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id*. (*quoting Tackett*, 180 F.3d at 1101). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

"[T]he Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy," and a VE's testimony generally should be consistent with it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Soc. Sec. Ruling 00-4p, 2000 SSR LEXIS 8, *4, 2000 WL 1898704 at *2). When there is a conflict between the DOT and a VE's testimony, neither automatically prevails over the other. *Id*. The ALJ must determine whether a conflict exists and, if so, determine whether the expert's explanation for the conflict is reasonable and whether there is a basis for relying on the expert rather than the DOT. *Id*.

### 2. The ALJ's Decision

At the hearing, the VE identified three jobs consistent with the ALJ's RFC that Plaintiff could perform: production assembler (DOT 706.687-010) with 300,000 jobs in the national economy, thread cutter (DOT 789.684-050) with 45,000 jobs in the national economy, and inspector, electrical goods (DOT 727.687-062) with 250,000 jobs nationally. [AR 76.] Upon questioning by Plaintiff's counsel, the VE stated that her job-numbers estimates came from "SkillTRAN or Job Browser Pro and [the] Occupation Employment Statistics, which is a Department of Labor publication." [AR 76-78.]

After the hearing, Plaintiff objected to the VE's testimony arguing that the number of jobs assessed by the VE was overstated. [AR 427-437.] After reviewing the evidence submitted by Plaintiff, the VE revised her job-number estimates as follows: production assembler with 25,000 jobs nationally, thread cutter with 600 jobs in the national economy, and inspector, electrical goods with 15,000 jobs nationally. [AR 216-221.] On this basis, the ALJ adopted the revised analysis by the VE and concluded that there are a significant number of production assembler and inspector jobs available in the national economy that Plaintiff could perform. [AR 30.]

### 3. Discussion

Plaintiff argues that the identified number of production assembler and inspector of electrical goods jobs that he could perform is not supported by substantial evidence. Specifically, Plaintiff argues that the ORS 2017 Dataset indicates that the average production assembler position requires standing/walking 7.19 hours a day. Plaintiff contends that this would reduce the number of positions available to him as he is limited to standing/walking 6 hours in an 8-hour workday. Plaintiff further argues that the ORS 2017 Dataset indicates that 52.2% of production assembler jobs require at least a high school diploma, thus further eroding the number of jobs available to Plaintiff as he only has a "marginal

education."[2] (Pltf.'s Br. at 7.) Finally, Plaintiff argues that data from the ORS demonstrates that the number of available production assembler jobs would be reduced even further based on Plaintiff's lifting, reaching and handling limitations.[3] When taking into account the ORS evidence presented by Plaintiff, he argues that only 8,502 production assembler jobs and 5,960 inspector positions are available to him, which fails to meet the significant number threshold.

Plaintiff's argument fails for two independent reasons. First, contrary to Plaintiff's argument there was no conflict between the DOT and the VE's testimony. Rather, Plaintiff argues that the testimony was contradicted by data presented in a different source, the ORS. But, the ALJ was not obligated to reconcile conflicts between the VE's testimony and the ORS. Although the regulations provide that the Administration will take administrative notice of data in the DOT, the County Business Patterns, and the Occupational Outlook Handbook ("OOH"), among others, see 20 C.F.R. § 404.1566(d), "[i]t does not follow that an ALJ must in every case reconcile conflicts *sua sponte* between each of those data sources and the VE's testimony. That requirement was established in SSR 00-4p, 2000 SSR LEXIS 8, a Social Security Ruling, only for the DOT and an associated document [the SCO]." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 n.6 (9th Cir. 2017). Thus, "it follows that the ALJ need not reconcile conflicts between a VE's testimony and information contained in sources not even mentioned in the regulations." *See, e.g., Rosalie M. M. v. Saul,* 2020 U.S. Dist. LEXIS 166816, 2020 WL 5503240 (C.D. Cal. Sep. 11, 2020); *Gonzalez v. Berryhill*, 2018 U.S. Dist. LEXIS 7590, 2018 WL 456130, at *3

---

[2] 20 C.F.R. §§ 416.964(b)(2) ("Marginal education means ability in reasoning arithmetic, and language skills which are needed to do simple, unskilled types of jobs.").

[3] Plaintiff also raises similar arguments with respect to the inspector of electrical goods position.

(C.D. Cal. Jan. 17, 2018) (finding no further inquiry or explanation needed by ALJ to rely on vocational expert's testimony, even where a conflict with the OOH exists). In fact, the ALJ was entitled to rely on the VE's testimony alone, without requiring more. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (explaining ALJ may take administrative notice of vocational expert' s testimony regarding job numbers without any additional foundation).

Second, the Court cannot credit Plaintiff's lay interpretation of raw statistical vocational data over the expertise of the VE. *See, e.g., Kevin E. v. Saul*, 2021 U.S. Dist. LEXIS 7701, 2021 WL 134584, at *6 (C.D. Cal. Jan. 14, 2021) (finding a lay interpretation of data from non-DOT sources, such as the OOH, O*NET OnLine, and the ORS, "fails to undermine the reliability of the vocational expert's testimony"); *David G. v. Saul*, 2020 U.S. Dist. LEXIS 42799, 2020 WL 1184434, at *5 (C.D. Cal. Mar. 11, 2020) ("Plaintiff's subjective lay assessment of the data [from various non-DOT sources] is insufficient to undermine the VE's analysis.")

Here, Plaintiff intertwines data from various non-DOT sources to recalculate and thereby reduce the number of jobs available to Plaintiff. However, courts in this circuit have consistently found that the VE, the ALJ, or the Appeals Council – as opposed to the federal court – is in the optimal position to interpret raw statistical data. *See Munroe v. Colvin*, 2014 WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting argument that vocational expert's estimated 500,000 garment sorter jobs should have been reduced to only 650 jobs, representing a subset of jobs within a larger category of "production worker" occupations; court observed that the plaintiff was not a vocational expert and there was no indication she was qualified to assess the data); *see also Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (determining ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a data source listed in the regulations, and the data therefrom served only to show that

7

evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony). Moreover, the Ninth Circuit has held that "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Thus, when the record contains ambiguous or conflicting evidence, as Plaintiff alleges here, the Administration is responsible for resolving the conflict. *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir .2001). As such, the ALJ's decision should be upheld.

The VE properly relied on her professional expertise and testified that there were 25,000 production assembler jobs and 15,000 inspector, electrical goods jobs nationally. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number). Accordingly, the ALJ's decision is thus supported by substantial evidence and remand is not warranted on this claim of error.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: March 30, 2021

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE